PUBLIC SERVICE RAILWAY COMPANY, PROSECUTOR, v. BOARD OF PUBLIC UTILITY COMMISSIONERS, RESPONDENT.

Argued June 16, 1921—Decided July 1, 1921.

1. An order made by the board of public utility commissioners requiring a public utility to set apart yearly a depreciation fund of a fixed amount, and its refusal therefor of a sufficient rate for services rendered to produce the necessary income for that purpose, is not the fixing of a just and reasonable rate.

2. The court has no power to fix the rate, for that is committed to the public utility commissioners, but where the order made is not supported by the evidence, the court has the power to set aside the order and remand the proceeding to the commissioners to fix a just and reasonable rate based on the evidence.

On *certiorari.*

Before Justices TRENCHARD, BERGEN and MINTURN.

For the prosecutor, *Frank Bergen* and *Robert H. McCarter.*

For the respondent, *L. Edward Herrmann, Frank H. Sommer* and *George L. Record.*

The opinion of the court was delivered by

BERGEN, J. The prosecutor filed with the state board of public utility commissioners a schedule fixing its rate for transportation of passengers at ten cents for each person, including transfers required by law, which was an increase of three cents where no transfer was given and of two cents where it was. The commission, by its order, suspended the effect of the increase, and after hearing made an order refusing its approval of the new schedule of rates. To review this order a writ of *certiorari* was allowed under which the record relating to it has been brought to this court. The proceeding is governed by subdivision (*h*) of section 17 of "An act concerning public utilities" (*Pamph. L.* 1911. *p.* 374; *Supp.*

*Comp. Stat., p.* 1280), which provides that when a public utility increases its rates "it shall be the duty of said board to approve any such increase, change or alteration upon being satisfied that the same is just and reasonable." This, of course, means that if the proofs show conclusively that the increase is just and reasonable it is made the duty of the board to approve, for that is the legislative mandate. We think the evidence shows conclusively that a considerable part, at least, of the increased rate is just and reasonable, and that the major part is required to pay the cost of operation and maintenance, and that, without additional income to make required repairs, they cannot be made, thereby endangering the lives of its passengers. It should be kept in mind that the public as well as the company are interested in the continuance of the service, and that it should be made as safe as possible for the public needs no argument, nor can it be doubted that its cessation or inefficient management would seriously injure the public, which it is the duty of the board of commissioners, as well as the utility corporation, to avoid if possible  Among the powers delegated the commissioners is to require every public utility "to furnish safe, adequate and proper service and to keep and maintain its property and equipment in such condition as to enable it to do so," section 17 (*b*) of the act (*Supp. Comp. Stat., p.* 1279), and also to carry a proper and adequate depreciation account which, with the income from the investment of the fund so carried, shall not be used otherwise than for depreciation, improvements, new constructions, extensions or additions to the property. Subsection F (of the section last referred to). The carrying of such an account has been required of the prosecutor by the commissioners and thus becomes an element to be considered in fixing a just and reasonable rate for the services rendered. Under the statute properly construed, the power to fix rates should be reasonably and justly exercised, having due regard to the object to be accomplished by the legislative control delegated to the board of utility commissioners, which is a fair return for the necessary service rendered; the maintenance required by statute, or the legal requirements of the board, as well as state and municipal

taxes imposed, and a reasonable income on the capital invested. A rate which does not provide for the depreciation fund imposed by the board, nor for the operating expenses of the utility company is not, in our judgment, a just and reasonable rate which the statute contemplates. The evidence clearly shows that the present rate under existing conditions will bankrupt the company as well as endanger the lives of its passengers for want of funds to make imperative repairs. To require a maintenance fund to be carried, and at the same time refuse an income to provide it, is, to say the least, a peculiar exercise of discretion under our statute relating to the power of fixing rates.

The board in its report of its conclusion denies relief from these conditions and treats the situation as an emergency which will soon pass. Why it so concludes is not apparent from the evidence when the evidence shows that for over three years the conditions, which produce threatened bankruptcy and lack of repair demanded, have not only continued but are constantly increasing. To call this situation an emergency, and refuse relief for that reason, is giving a meaning to the word "emergency" which neither our statute nor adjudged cases warrants. There is no evidence in this record from which it can be inferred that the present cost of operation and maintenance will not continue, and with it the so-called emergency, until its victim shall have collapsed to the great injury of its stockholders, and especially the public who depend upon it for transportation.

The present proceeding was instituted by the prosecutor which filed a schedule of increased rates with the board of commissioners and the latter gave public notice, after making an order suspending its effectiveness, of a public meeting, time and place being named, at which all persons who desired would be given a hearing as to the reasonableness of the proposed rate. At the hearing it was stipulated that if the rate proposed was not a just and reasonable one the board, if it deemed any increase proper, might consider and determine what increase ought to be allowed. The relief was denied upon the ground that the conditions creating the deficit was the result

of a sudden happening producing a crisis temporary in character, which the board called an emergency. Why an increased tax, enhanced cost of labor, of operation, and of necessary repairs should be called an emergency soon to be assuaged like a sudden flood, is not apparent to us either from the evidence or conditions of which we can take judicial notice, nor, as the board did, can we assume that other conditions will shortly exist. Another reason given for the action of the board is that no deficit in the cost of operation exists, based on the emergency theory, which it is claimed is justified by the opinion of Mr. Justice Swayze in *O'Brien* v. *Public Utility Board,* 92 N. J. L. 44. We do not find in that opinion anything which justifies the inference, suggested by the commissioners, that the learned justice was dealing with an emergency condition. The only question determined by him was whether an increase in rates was justifiable under the condition then existing, and the reasons are equally applicable whether the increased costs of wages was due to an order of the United States board or from any other cause. He was not dealing with a theory but with actual conditions, where the increase of proper costs of operation had advanced beyond income, and when the board had fixed a rate only sufficient to provide for cost of operation, without considering a return on the capital invested. In support of the conclusions of the board that the present rate is sufficient to pay cost of operation and fixed charges in the present emergency, and to show that there is no deficit for that purpose, it submits a schedule of actual conditions for 1920 and that estimated for 1921. The actual deficit for 1920 was $630,799, allowing $114,669 for maintenance instead of $800,000 required by the order of the board. The estimates for the year 1921 are rather speculative than reliable, and on this the board concludes that there will be a surplus, not now but at the end of the year, without making any allowance beyond $800,000 for imperative improvements which the evidence shows will exceed at least $1,200,000. So, that, assuming the estimate of the board is correct, there will be a deficit of $400,000 if the service is to be efficient and safe

for the public use, without taking into account the losses for 1918, 1919 and 1920, amounting to over $1,600,000. If this be called an emergency it is one that needs prompt relief, and ought not to be postponed until the board has reached a result in another case involving the fixing of a just and reasonable rate based on valuation. The prosecutor is entitled to cost of operation, and fair return on capital invested under the statute, and to have its rights determined on the case made by it in this proceeding.

To make an order requiring a public utility to set apart yearly a depreciation fund of a fixed amount, and to prevent a compliance by refusing the income necessary for that purpose, is not the fixing of a just and reasonable rate. The question is not a novel one, for in many municipalities in other states the rate has been fixed at ten cents, sometimes with a qualification that tickets of a given quantity shall be sold at a less rate, but all having a tendency to approximate that rate, but in this proceeding the board did nothing along that line; it merely refused to do anything to advance the present rate which the evidence shows is not just and reasonable in view of existing conditions.

Chief Justice White, speaking for the Supreme Court of the United States in *Southern Iowa Electric Co. v. City of Chariton,* 41 *Sup. Ct. Rep.* 400, said that the proposition was indisputable, "that, although the governmental agencies having authority to deal with the subject may fix and enforce reasonable rates to be paid public utility corporations for the services by them rendered, that power does not include the right to fix rates which are so low as to be confiscatory of the property of such corporations."

It is no answer to this critical situation to declare that the utility company is over-capitalized and suffering from that fact. The situation presented here is not a demand based upon a desire for profits upon the investment, but mainly for the vital purpose of enabling the corporation to pay its operating charges and upkeep and thus properly continue the services required by its charter.

This court has no power to fix the rate, for that is committed to the public utilities commissioners, but where the order made is not supported by the evidence, the court has the power to set aside the order and remand the proceedings to the commissioners to fix a just and reasonable rate based on the evidence, and that was not done in the present proceeding. The order should be set aside and the matter remanded to the consideration of the board in order that it may fix a just and reasonable rate based on the evidence in this particular proceeding. For that purpose the order under review will be set aside and the proceeding remanded to the board of commissioners in order that they may approve or disapprove in whole or in part the proposed increase as they may determine, from the evidence of conditions existing, to be sufficient to meet the necessary cost of proper and efficient operation, as is required by the statute, as well as the cost of such necessary reparations, as the safety of the public demands.